HLD-020                                                                                          NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 26-1708
_____

IN RE: JAYDEN MARTIN; SPARKLE MARTIN,

                                                                                                        Petitioners
_____

On a Petition for Writ of Mandamus to the
United States District Court for the District of New Jersey
(Related to D.N.J. Civ. No. 1:23-cv-21669)
_____

Submitted Pursuant to Rule 21, Fed. R. App. P.
July 2, 2026
Before:  CHAGARES, *Chief Judge*, HARDIMAN and RESTREPO, *Circuit Judges*

(Opinion filed: July 24, 2026)

_____

OPINION*
_____

PER CURIAM

        Jayden and Sparkle Martin have filed a petition for a writ of mandamus directed to

their ongoing case in the District Court.  We will deny their petition.

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

I.

Sparkle[1] filed a complaint in New Jersey state court on behalf of herself and purportedly on behalf of her son Jayden, who then was a minor but now is 18. Their primary claim was that, when Sparkle tried to enroll Jayden in the Lenape Regional High School, the School District refused to enroll him in violation of the McKinney-Vento Homeless Assistance Act. Sparkle also purported to assert claims on behalf of herself and Jayden (who has autism) under the Individuals With Disabilities Education Act, the Americans With Disabilities Act, and the Rehabilitation Act.

The defendants removed the complaint to federal court, and each side filed dispositive motions. Sparkle also filed a motion for appointment of counsel. By opinion and order entered August 14, 2024, the District Court addressed these motions in relevant part as follows. (ECF Nos. 29 &30.) First, the court held that Sparkle could not litigate claims pro se on behalf of Jayden because he was then a minor. *See Osei-Afriyie v. Med. Coll. Of Pa.*, 937 F.2d 876, 883 (3d Cir. 1991). Second, the court alleviated that issue by deciding to appoint counsel for Jayden, and it decided to appoint counsel for Sparkle too. Third, the court held that Sparkle could pursue a claim on her own behalf for violation of the IDEA (which claim the court dismissed without prejudice for lack of exhaustion) and for violation of the McKinney-Vento Act. Fourth, the court held that the School District did indeed violate the McKinney-Vento Act by refusing to enroll Jayden and that

---

[1] When referring to petitioners individually, we use their first names for ease of reference and without intending any undue informality or disrespect.

violations of that Act are enforceable under 42 U.S.C. § 1983.  But fifth, the court held that plaintiffs cannot recover damages for this violation unless they establish the School District's municipal liability under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978).

These rulings allowed Jayden to pursue his claims through appointed counsel and allowed Sparkle, also through appointed counsel, to amend her IDEA claim and pursue damages for violation of the McKinney-Vento Act on a *Monell* theory.  Toward these ends, the court appointed counsel (ECF No. 31), who later filed an amended complaint on behalf of both Jayden and Sparkle (ECF No. 38).  Defendants answered the amended complaint (ECF No. 40), and the District Court entered an amended scheduling order teeing up the case to proceed to discovery.

But things soon went sideways.  About two weeks after the court entered its amended scheduling order, appointed counsel filed a motion to withdraw reporting irreconcilable differences with Sparkle, who counsel reported had been contacting defendants and the court on her own.  (ECF No. 47.)  The court granted counsel's motion to withdraw and advised Sparkle that it would not appoint new counsel for her because she had shown an ability to represent herself.  (ECF Nos. 49 & 50.)  But because Jayden was a still a minor, the court appointed new counsel for him.  (ECF Nos. 53 & 57.)

The case took another turn when Jayden's new counsel apparently requested "funding for a disability advocate to facilitate communication with her client."  (ECF No.

73.)[2]  That request prompted the Magistrate Judge to schedule a meeting with Jayden and counsel.  Following that meeting and additional correspondence from counsel, who advised the court that Jayden had then turned 18, the Magistrate Judge ordered the appointment of a guardian ad litem for Jayden by order entered August 7, 2025.  (ECF No. 80.)[3]  The order also directed counsel to identify an appropriate person to serve as the guardian.  Just four days later, Jayden's new counsel too filed a motion to withdraw and requested appointment of new counsel experienced in education or disability law.  (ECF No. 81.)  Sparkle then filed a motion to vacate the guardianship order as unwarranted.  (ECF No. 84.)  Jayden too objected to the order and also requested new counsel experienced in education law.  (ECF No. 85.)  The District Court held a hearing on Sparkle's motion to vacate the guardianship order and denied the motion on September

---

[2] We say "apparently" because the only mention of this request in the record is a Magistrate Judge's reference to the request in the text-only order at ECF No. 73.

[3] Although the Magistrate Judge ordered appointment of a "guardian ad litem," we do not read the order to appoint such a guardian in the ordinary sense.  For example, the Magistrate Judge specified that she was addressing and granting Jayden's counseled request for a "disability advocate."  And while the Magistrate Judge proceeded to rely on Fed. R. Civ. P. 17(c)(2), which authorizes appointment of a guardian or other appropriate protection only for "a minor or incompetent person," Jayden had turned 18 by that time and the Magistrate Judge does not appear to have found him incompetent.  The Magistrate Judge also specified that the guardian would not have decision-making authority and would instead merely facilitate Jayden's participation in the litigation.  Nevertheless, we will refer herein to a "guardian" as the Magistrate Judge did.  We also note that, although this order is sealed in the District Court, petitioners have attached it to their mandamus petition and have not requested sealing in this Court.  They also have requested the unsealing of documents in the District Court.  We express no opinion on that issue but note that we describe the order herein because petitioners challenge that order and have themselves filed it publicly in this Court.  *See also* n.4, *infra*.

16, 2025.  (ECF No. 91.)  The court also apparently ordered Jayden's counsel to continue seeking an appropriate person to serve as his guardian.

Three further developments since then are presently relevant.  First, the Magistrate Judge entered an order advising that she had received a "letter from a health care provider relaying Plaintiff Sparkle Martin's request for a stay of the case due to certain medical concerns."  (ECF No. 107.)  In response, the Magistrate Judge ordered the matter administratively terminated as to Sparkle pending further updates.

Second, Jayden's counsel filed letters advising the Magistrate Judge that she was still trying to locate someone to serve as Jayden's guardian.  Those letters prompted the Magistrate Judge to enter an order administratively terminating the matter as to Jayden too.  (ECF No. 118.)  The Magistrate Judge also directed counsel to continue filing status reports regarding her efforts and directed Sparkle to file status reports regarding her desire to proceed with the case.  (*Id.*)

Third, Sparkle and Jayden thereafter filed a flurry of pro se motions, including a motion and amended motion to vacate the administrative terminations and reopen the case.  (ECF Nos. 121 & 124.)  In these and other filings, they argued that Jayden did not want or need a guardian and advised the court that Jayden instead wanted Sparkle to proceed on his behalf pursuant to a power of attorney.  For that reason and others, Jayden's counsel then filed a second motion to withdraw.  (ECF No. 122.)  After Sparkle later filed over a dozen other motions and other documents, the District Court entered an order on March 13, 2026.  (ECF No. 142.)  The order directed the court's Clerk to

administratively terminate all pending motions other than the second motion of Jayden's counsel to withdraw.  The order also states that "the Court will address the issues of reopening this matter and pro bono representation in due course." (*Id.*)  About two weeks later, Jayden and Sparkle filed the mandamus petition at issue here.[4]

## II.

A writ of mandamus is a "drastic" and "extraordinary remedy" that we have the discretion to grant only when, inter alia, the petitioner has a "clear and indisputable" right to relief and no other way to obtain it.  *In re Pressman-Gutman Co.*, 459 F.3d 383, 398-99 (3d Cir. 2006) (cleaned up).  Under this standard, we deny petitioners' petition because the forms of intervention they seek are not warranted at this time.

Petitioners' primary request is that we vacate the administrative termination of their claims and order the District Court to proceed.  We see no need to do so.  A district court's inaction can warrant mandamus relief when it amounts to a failure to exercise jurisdiction.  *See Madden v. Myers*, 102 F.3d 74, 79 (3d Cir. 1996).  But in this case, petitioners filed their petition just two weeks after the court entered an order stating its intention to address reopening and the issue of representation "in due course."  And although more time has passed since then, we discern no undue delay given the

---

[4] As noted above, Jayden is now an adult and does not appear to have been adjudicated incompetent.  He also has personally signed documents in support of the mandamus petition.  Thus, we see no impediment to his ability to proceed with the petition on his own behalf.  In so noting, we express no opinion on the merits of the guardianship order, the issue of Jayden's representation in the District Court, or how that court should conduct its own further proceedings.

challenges posed by this difficult case. We instead commend the District Court for its attention to this matter thus far, and we so no reason not to take the court at its word that it will address reopening and proceed with the case in due course.

Petitioners also raise a number of arguments regarding *how* they want the court to proceed with the case. We see no need for our intervention in that regard either. We address three of petitioners' specific requests.

First, petitioners ask us to vacate the Magistrate Judge's order finding it appropriate to appoint a guardian ad litem for Jayden.[5] They argue that Jayden requested only a disability advocate, not a guardian, and that a guardian is unnecessary because Jayden is a competent adult. If the Magistrate Judge's order were a true guardianship order, then petitioners' arguments might raise concerns. *See* Fed. R. Civ. P. 17(c)(2) (authorizing appointment of a guardian ad litem or other appropriate protection only for "a minor or incompetent person").

---

[5] Sparkle unsuccessfully sought District Court review of this order, and there may be some question whether it was then immediately appealable or could have been certified for immediate appeal. *Compare In re Pressman-Gutman*, 459 F.3d at 395-98 (holding that an order was not immediately appealable under the collateral-order doctrine where it appointed a guardian ad litem for an entity rather than a person who has the right to proceed pro se), *with id.* at 410 (Irenas, J., dissenting). If so, then mandamus on this issue might be inappropriate for that reason alone. *See id.* at 398, 399 n.15. But we need not decide that point because we are denying relief for other reasons. We further note that we decline to construe the mandamus petition as a notice of appeal on this issue because, if it were a notice of appeal, it would be long untimely. *See In re Arunachalam*, 812 F.3d 290, 293 & n.3 (3d Cir. 2016) (per curiam).

But the order is not a true guardianship order as noted above. And the District Court evidently is attuned to petitioners' concerns because it denied Sparkle's request to vacate the guardianship order after holding a hearing on the issue. The record does not reveal why,[6] but the court can consider that issue further if necessary in considering the issues of reopening and representation. We note that, if Jayden is not incompetent within the meaning of Rule 17(c), there might be no impediment to his ability to pursue this litigation as he wishes, including by adopting Sparkle's filings. But we express no opinion on that issue and instead leave the manner of conducting further proceedings to the discretion of the District Court.

Second, petitioners ask us to order the court, after reopening this matter, to immediately determine and award damages. They argue that the court already has found the School District liable for damages and all that remains to be determined is the amount.[7] Petitioners are mistaken. The court has held only that damages *potentially* are available under § 1983 for the School District's violation of the McKinney-Vento Act but that Sparkle must first prove that the School District is liable for damages under *Monell*. Petitioners have filed an amended complaint asserting *Monell* liability, the School

---

[6] The court's order states that it denied this relief for the reasons it stated on the record at the hearing, but the hearing evidently has not been transcribed.

[7] They also argue that they need immediate funds for various reasons, and they ask us to order an immediate interim award of damages. That request is denied.

District has answered the complaint, and whether the School District is liable for damages remains to be determined.

Third, petitioners ask us to order the reassignment of this matter to a new judge. It is not clear whether they request reassignment to a new Magistrate Judge, a new District Judge, or both. But to the extent that petitioners seek recusal or disqualification of the Magistrate Judge, they should address that request to the Magistrate Judge first and then to the District Court if necessary. *See Cole v. U.S. Dist. Ct.*, 366 F.3d 813, 817-20 (9th Cir. 2004); *In re Kensington Int'l Ltd.*, 353 F.3d 211, 223-24 (3d Cir. 2003). And to the extent that petitioners seek the same relief as to the District Judge, they should address that request to the District Judge in the first instance. *Cf. In re Kensington*, 353 F.3d at 224. In noting the appropriate way to request this relief, we do not suggest that it is due. To the contrary, petitioners' requests appear to be based largely on the kinds of "judicial rulings" and "administration efforts" that typically do not state a basis for recusal or disqualification. *See Liteky v. United States*, 510 U.S. 540, 556 (1994). Nevertheless, petitioners can raise these issues in the District Court as noted above.[8]

---

[8] Petitioners also can raise with that court their requests for leave to file a supplemental complaint and to "disqualify" Jayden's appointed counsel. We deny those requests without prejudice for that reason.

III.

For these reasons, the petition for a writ of mandamus is denied. Petitioners'
motions and other requests for relief are denied as well except to the extent that we
permit and have considered all of their filings in this Court.[9]

---

[9] Petitioners' other requests are either unnecessary or unwarranted. For example, they ask us to prohibit the District Court from "blocking" their filings through the Clerk's Office, but we see no indication of any restrictions on their ability to file documents with the court. Petitioners also ask us to reverse a finding that Sparkle is "incapacitated," but we see no such finding. Nor do we see grounds for any other relief.